## In re Estate of Rosa Swartz, Deceased.

## Desider L. Tarjan, Administrator, Appellee, v. Rosa Revesz, Appellant.

## Gen. No. 25,035.

1. EXECUTORS AND ADMINISTRATORS, § 122*—*what is extent of administrator's title.* When an administrator is appointed for the estate of a deceased person and letters are issued, the letters relate back to the time of the decedent's death, and the title to all of the decedent's property, including personal property *in specie* which has come into the hands of a third person after such death, is vested in the administrator and the probate court has jurisdiction of a proceeding to recover such property from the third person, although the latter does not claim that the property came to her from the decedent during life but that it was given her by the decedent's husband, but also admits that the property was taken by her from the decedent's effects.

THOMSON, J., dissenting.

2. EXECUTORS AND ADMINISTRATORS, § 254*—*what jurisdiction of probate court depends on.* The jurisdiction conferred upon the probate court by sections 81 and 82 of the Administration Act (J. & A. ¶¶ 130, 131) is not dependent upon what kind of claim is made by the one actually possessing the personal property sought for the estate but upon the nature and source of the property.

3. APPEAL AND ERROR, § 1273*—*what will be assumed as to allowance of claims by probate court.* Where the record on appeal from a judgment directing one to turn over certain property to an administrator as property of the estate shows that certain claims were allowed, *held* that under the record as it stood the Appellate Court was bound to assume that the claims were properly allowed.

4. APPEAL AND ERROR, § 1273*—*what will be assumed as to status of property in probate court.* On appeal from a judgment in a proceeding to compel one to turn over to the administrator certain property as property of the estate, where there is no evidence that the property had been inventoried previously, it may be assumed that such property was in the nature of further assets, and, as such, it could be subjected to the payment of a claim

against the estate notwithstanding such claim was filed after the running of the statute of limitations, dating from the filing of the letters of administration.

Appeal from the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed July 7, 1920.

G. A. BURESH, for appellant.

LEFKOW & LEFKOW, for appellee; K. B. CZARNECKI, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The respondent, Rosa Revesz, having obtained possession of a pair of diamond earrings taken from the body of Rosa Swartz, a few minutes before or about the time of her death, the question arises whether the administrator of the estate of Rosa Swartz, deceased, is entitled to possession of them.

The probate court and the circuit court have both held that they belong to the administrator and ordered them turned over to him.

On January 28, 1915, the respondent, Rosa Revesz, was cited to appear before the probate court of Cook county to show cause why she should not turn over certain property belonging to the estate of Rosa Swartz, deceased.

On February 11, 1915, the respondent answered denying the possession of such property but alleging that Ignatz Swartz presented to her a pair of earrings in consideration of certain services; that she has offered to pay the said Ignatz Swartz the value of the earrings but that he has refused to accept payment for them; that there are no debts of the estate and no heirs except the said Ignatz Swartz.

On July 14, 1915, the respondent filed an additional answer reciting, among other things, that the pair of

earrings came to her after the death of the said Rosa Swartz.

On May 24, 1916, an order was entered in the probate court upon the petition of the administrator and answer of the respondent, and upon evidence taken, finding that the deceased, Rosa Swartz, at the time of her death was the owner of a certain pair of diamond earrings; that they came into the possession of the respondent after the death of Rosa Swartz and without consideration; that the respondent had failed to prove her claim that the said personal property was a gift from the deceased; that the pair of diamond earrings is now in the possession of the respondent. Further, that the earrings be turned over instanter to the administrator of the estate of Rosa Swartz; that the fair cash value of the earrings is the sum of $350.

An appeal was taken from that order of the probate court to the circuit court of Cook county.

On January 10, 1919, an order was entered in the circuit court of Cook county finding that the pair of earrings came into the possession of the respondent after the death of Rosa Swartz and that they were not acquired by the respondent for a valuable consideration and that the respondent failed to prove that the earrings were a gift to her from Ignatz Swartz, the husband of the deceased. An order was then entered that the respondent should, within 30 days, turn over the earrings to the administrator of the estate of Rosa Swartz. From that order an appeal was taken to this court.

The trial in the circuit court began on July 1, 1918. The evidence showed that Rosa Swartz died on April 13, 1914. One Alvina Mueller, who worked for the deceased as a hired girl for about 6 months, up to the time of the death of Rosa Swartz, testified, that she was present at the time of the death of Rosa Swartz and that there were also present Adolph Swartz, a

brother-in-law of the deceased; the respondent, and a nurse and herself; that immediately after her death, or just prior thereto, the nurse took one earring and the respondent the other from the body of the deceased. Adolph Swartz, the brother-in-law of the deceased, testified that he was present when the earrings were taken by the nurse and the respondent; that the respondent said, "I am going to keep them in my possession until after the funeral." He further testified that at the time the earrings were taken the lips of Rosa Swartz were still twitching, corroborating the witness Mueller, who testified that at the time the earrings were taken the mouth of Rosa Swartz was still moving.

Ignatz Swartz, the husband of the deceased, testified that a few days after the death of his wife he had a conversation with the respondent in which she stated that she would like to have the diamonds and would pay him for them; that he told her he did not wish to sell them and wanted them back; that she said "All right, we will see about it"; that a few days later in talking with her she stated that her lawyer advised her not to give them back.

The respondent, Rosa Revesz, testified that at the time of the death of Rosa Swartz there were present Mrs. Biggerness, Alvina Mueller, the nurse and herself; that Adolph Swartz was not there; that, immediately after Rosa Swartz died, the nurse took out one earring and she took out the other; that, a few days after the death of Rosa Swartz, she had a conversation with Ignatz Swartz in which she told him that she would like to have the earrings and would pay him what they were worth; that in response he told her to keep them; that she was entitled to them; that at that time she had the earrings in her hand and was ready to pay for them; that he told her she was entitled to them for what she had done for his wife; that the substance of that conversation was re-

peated at another meeting shortly afterwards.

Albert Revesz, the husband of the respondent, testified that a few days after the death of Rosa Swartz, in a conversation between Ignatz Swartz and the respondent, he heard his wife say to Ignatz Swartz, "Here are the earrings. I give it to you, if you want it back. I give it to you, if you want it"; that Ignatz Swartz then said, "I don't want it. Keep it. You earn it. * * * You was working hard, so you deserve for the work what you did for her." After the foregoing testimony was introduced, it was admitted by counsel for the administrator and the petitioner that up to that time no claims had been filed in the estate in the probate court, and, further, that Ignatz Swartz was the sole heir of the deceased.

On behalf of the petitioner, and in rebuttal, Ignatz Swartz testified, denying the testimony of the respondent as to the conversation attributed by her to him. At the close of the foregoing testimony the matters involved were discussed between the court and counsel and then adjourned to July 8, 1918, for further argument, and on the latter date further adjourned until July 11, 1918, for further argument. On the latter date the trial judge announced: "I will continue this matter generally and give you an opportunity to publish and see if you can find some claims against the estate." To that, objection was made by counsel for the respondent, the objection being that no claims had been filed against the estate and that the evidence had already been closed.

Subsequently, on October 24, 1918, notice having been served upon counsel for the respondent, counsel for the petitioner moved the court to open up the case and be allowed to introduce proofs of the records in the probate court allowing claims against the estate. That motion was continued from time to time and finally heard on December 24, 1918, and on that occasion it was admitted by counsel for the peti-

tioner that claims were filed and allowed, but only since June, 1918. It was then claimed by counsel for the respondent that the statute of limitations began to run from the date the letters of administration had been issued and that the affidavit and petition for citation were made on January 15, 1918, and, further, that the statute of limitations need not be specially pleaded by the administrator when the time of the statute has expired. Counsel for the respondent objected because the claims were filed more than 2 years after the letters of administration were granted.

The trial judge then allowed a motion to introduce further evidence. The petitioner then offered in evidence two certified copies of the probate court records showing an allowance of claims against the estate of Rosa Swartz, deceased. They were objected to. Two claims, one for $150 in favor of Dr. Kolischer, and one in favor of Dr. Edward W. Bok, were offered in evidence.

Evidence was then offered as to the fair cash market value of the earrings. One Fischer, a diamond merchant, put it at $250, another from $325 to $350, and another at $375.

At a continuation of the trial on January 4, 1919, counsel for the respondent offered in evidence a certified copy of the letters of administration and of the inventory. The former was dated November 28, 1914, and the latter November 4, 1918. Also there was offered in evidence the petition of Ignatz Swartz for letters of administration to be issued to Desider L. Tarjan, dated November 28, 1914, and the letters of administration dated December 3, 1914. A motion was then made by counsel for the respondent to strike out the certified copies of orders allowing the claims of Kolischer and Bok. That motion was denied. The court then found that the personal property in question "came into the hands of the respondent after the death of the deceased and that said respondent has

not proved by a preponderance of the evidence that she acquired said property for a valuable consideration from the deceased or that said personal property was a gift to said respondent from Ignatz Swartz," and directed said respondent, within 30 days, to turn the earrings over to the administrator.

It is claimed by the respondent that as the property in dispute came to the possession of the respondent after the death of Rosa Swartz, that the circuit court had no jurisdiction under sections 81 and 82 of the Administration Act (J. & A. ¶¶ 130, 131). But it must be observed that in the instant case it is admitted that the property belonged to the deceased at the time of her death and that the respondent does not claim that the earrings came to her from the deceased in the lifetime of Rosa Swartz, but, only, that Ignatz Swartz, the husband and sole heir at law made a gift of them to the respondent after the death of Rosa Swartz. When Tarjan was appointed administrator and letters were issued, those letters related back to the time of the death of the decedent and the title to all her personal property, including the earrings, vested in the administrator and gave the probate court jurisdiction. *Globe Acc. Ins. Co. v. Gerisch,* 163 Ill. 625; 18 Cyc. 213. In *Blair v. Sennott,* 134 Ill. 78, the claimant had collected money of an estate after the intestate's death. He refused to turn it over to the administratrix. Proceedings were had under section 81, chapter 3, of the Statutes (J. & A. ¶ 130), and the court held that any "goods, chattels, moneys, etc., which belonged to the estate of the deceased and which have come into the hands of the parties charged since the death of the deceased" could be reached by the probate court. It would seem, therefore, that if an agent who has collected—after the death of the decedent—money belonging to an estate and has refused to turn it over, as in the *Blair* case, can be brought into the probate court under the statute,

*a fortiori,* one who, as here, admits the personal property, the earrings, were actually taken from the effects of the deceased, may be brought in. Further, it would seem reasonable to hold, also, that her claim, *in pais,* that the husband of the deceased gave them to her after his wife's death, would not oust the jurisdiction of the probate court.

The jurisdiction of the probate court under sections 81 and 82 cannot be considered to be dependent upon what kind of a claim is made by the one actually possessing the personal property; but that jurisdiction must be considered to be dependent upon what actually is the nature and source of that personal property. If, as here, the personal property was, at the time it was taken, admittedly that of the estate, the title to which passed to the administrator, and it has actually remained *in specie,* as here, then the probate court is entitled under the statute to consider it within its jurisdiction and order it brought in.

It is claimed by the respondent that the court erred in admitting the claims which were filed and allowed in the estate in the probate court and that they were barred by the statute of limitations. The record shows that they were allowed, and, as the record stands, we are bound to assume they were properly allowed.

Further, as to the claim that the statute of limitations had run when the claims were filed, it may be said there is no evidence that the earrings had already been inventoried, and as we are then entitled to assume that they were in the nature of further assets, they could, of course, at once become subject to the belated claim. *Judy v. Kelley,* 11 Ill. 211, 216; *Thorn v. Watson,* 10 Ill. 26.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

MR. JUSTICE O'CONNOR concurs, MR. JUSTICE THOMSON dissenting.

MR. JUSTICE THOMSON dissenting:

I am 'unable to concur in the foregoing decision. We have in this case a dispute between the administrator of an estate and another involving the title to personal property. The probate court is without jurisdiction to adjudicate any such issues under the provisions of sections 81 and 82 of the Administration Act (J. & A. ¶¶ 130, 131). In *Dinsmoor v. Bressler*, 164 Ill. 211, the court said: "The summary proceeding in the probate court to compel the production and delivery of property 'is not the proper remedy * * * to try contested rights and title to property between the executor and others.' * * * Nor does the power conferred upon probate courts to subpœna and examine parties alleged to conceal or withhold property of the estate authorize such courts to try the title to the property in dispute." This case was cited with approval in *Martin v. Martin*, 170 Ill. 18, and also in *Moore v. Brandenburg*, 248 Ill. 232. In the former case the court said: "The primary purpose of the statute is to discover assets of estates, and the court is authorized to make such order in the premises as the case may require. The statute is not designed to afford the means of collecting debts due to estates, * * * nor to try contested rights and title to property between the executors and others. * * * The mere fact that one party to the controversy is an executor will not justify depriving the other party of a trial by jury or authorize his imprisonment."

In *Rone v. Robinson*, 188 Ill. App. 438, a citation was issued under the provisions of sections 81 and 82, directing and requiring appellee to surrender a certain certificate of deposit. The evidence showed that the intestate was the owner of $1,200 in money which

he wished to give to his daughter, the appellee. He deposited it in the bank, taking a certificate reading: "Martha E. Robinson (appellee) has deposited in this bank $1,200, payable to herself in current funds. * * * In case of the death of Martha E. Robinson, before the death of Ivan Jackson (intestate), this certificate of deposit becomes the property of Ivan Jackson." The intestate gave this certificate to appellee and told her to keep it as it was hers. After the intestate died, appellee claimed to be the owner of the certificate while appellant, the administrator of the estate of the intestate, claimed it had never been delivered to her. The court said that the issue presented "was purely a contest of the right of ownership of this certificate, and being a contest as to its ownership, we do not think that the citation, under sections 81 and 82, is the proper remedy to try a contested question of this character. * * * The court did right in dismissing the petition." To the same effect are *Hays v. State Bank of Saybrook,* 202 Ill. App. 535, and *Gulzow v. Fillwock,* 205 Ill. App. 366.

In none of the cases referred to were the facts involved entirely like those involved here. But there would seem to be no logical distinction between a gift claimed by the respondent from the deceased, as in *Rone v. Robinson, supra,* and one claimed by the respondent from the administrator, as in the case at bar, where the latter is the sole heir and there were no claims involved in the estate.

It appears that in this case no claims had been filed in the estate up to the time the evidence was in and the cause submitted to the circuit court although the hearing in that court occurred on July 1, 1918, and the petition of the administrator in the probate court had been filed since January 28, 1915. After the close of the case, counsel for the petitioning administrator admitted that the latter could have made a valid gift of the property in question, and stated

that the issue presented was one of fact as to whether
he had made such a gift. The court then pointed out
that that involved a question of the title to the prop-
erty and stated that the respondent had a right to
have that question tried in a proper tribunal, that it
presented an issue for a jury to determine, and he
intimated that the circuit court could not determine
such a dispute under the provisions of sections 81
and 82. The trial court said further: "Where there
are no claims made against the estate, the sole and
only heir may give away the personal property and
pass good title. Whether or not he did in this case,
I have not the power to decide. On that question she
(respondent) has a right to a trial by jury." There-
upon, on its own motion, the court continued the cause
so as to give the petitioner "an opportunity to pub-
lish and see if you can find some claims against the
estate." At a subsequent hearing evidence was ad-
mitted involving claims which had been filed in the
probate court in the meantime. In my opinion this
was error. The statute of limitations had run against
the filing of claims in the probate court. This was
true although no publication for claims had been
made, for the statute begins to run from the date of
the letters of administration which was more than 3
years before the time of the hearing on this petition
in the circuit court. *People v. White,* 11 Ill. 341. Sec-
tion 70 of the Administration Act (J. & A. ¶ 119) pro-
vides that all claims not exhibited within one year
"shall be forever barred unless creditors shall find
other estate of the deceased not inventoried or ac-
counted for." While the earrings involved here had
not been inventoried they were "accounted for" so
far as the administrator was concerned, for his orig-
inal petition in the proceeding at bar was filed in the
probate court soon after his letters were issued. If
the issue of fact presented here were determined, in
a proper proceeding, in favor of respondent she

would necessarily be held to have "accounted for" the property in question at the time the period of limitation expired and no claims had been filed. Claims thereafter filed could not be allowed and satisfied by means of these earrings as unaccounted for property. *Auburn State Bank v. Brown,* 172 Ill. 284. The petitioner was in a position to make a valid gift of these earrings inasmuch as he was the sole heir of the estate and no claims were filed within the period allowed by law. The question of whether he did make such a gift presented an issue which the probate court had no jurisdiction to determine and such jurisdiction could not be conferred by the filing of claims subsequently. Those claims would be subject to a plea of the period of limitations provided in section 70, if the alleged gift was made as claimed by the respondent. If it established that the respondent is the donee or assignee of the petitioner as to these earrings, she should have the same privilege of resisting these claims by interposing the defense referred to as the administrator might have had, notwithstanding the fact he did not see fit to use it.

Furthermore, the claims brought into this case do not have the appearance of bona fide claims. It is quite apparent from the record that those whose claims were filed after this cause was continued by the circuit court to see if the administrator could not "find some claims against the estate," as the court put it, did not "find other estate of the deceased." Both claims are by doctors for professional services rendered deceased. They are sworn to before one of the attorneys of the administrator, as a notary public. The administrator filed his appearance and consented to the allowance of the claims and directed the clerk of the probate court to charge the fees for filing the claims to the estate. This attempt to invest the court with jurisdiction should not prevail and in my opinion the petition should have been dismissed for lack of jurisdiction.